No. 24-1492

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

_____

National Wildlife Refuge Association, *et al.*,

Plaintiffs-Appellees,

v.

Rural Utilities Service, *et al.*,

Defendants-Appellees.

v.

ITC Midwest LLC, *et al.*,

Intervening Defendants-Appellants.

_____

**On Appeal from the United States District Court
for the Western District of Wisconsin
The Honorable William M. Conley, Judge
Case No. 3:24-cv-00139-wmc**

_____

**Plaintiffs-Appellees' Emergency Motion for Expedited Clarification
of This Court's May 2, 2024 Order**

_____

Plaintiffs-Appellees National Wildlife Refuge Association, Driftless Area

Land Conservancy, and Wisconsin Wildlife Federation (collectively,

"Conservation Groups") respectfully move this Court to clarify its May 2, 2024

Order (Doc. 27), pursuant to Fed. R. App. P. 27(a)(2)(A), in order to allow the district court to consider issuing a preliminary injunction aligned with the *Winter* factors if the law and facts so justify, and addressing other equitable considerations, including the FAST Act, for a permanent injunction. The district court held a status conference on May 3, 2024, in which the court:

(1)  Denied Conservation Groups' motion for a temporary restraining order and preliminary injunction because the district court interpreted this Court's May 2 Order to completely preclude consideration of a preliminary injunction; and

(2)  Held that "because of the potential for substantial environmental damage," the court would enter an expedited schedule for judicial review and determination of the merits for a permanent injunction and other relief in light of this Court's May 2, 2024 Order (Doc. 27) and this Court's decision in *Driftless Area Land Conservancy v. Rural Utils. Serv.* 74 F.4th 489 (7th Cir. 2023). *See* May 3, 2024 Text Order setting expedited schedule, attached as Exhibit A to this motion, and Stenographic Transcript of the May 3, 2024 hearing, dated May 6, 2024, at 4, attached as Exhibit B.

The district court stated that it is prepared to make supplemental findings and "revisit" the Conservation Groups' renewed motion to preliminarily enjoin the Intervenor-Defendants-Appellants ("Transmission Companies") and the Federal

Defendants *if* Conservation Groups obtain a "clarification" from this Court that the district court has authority to do so following the May 2 Order. *See* Exhibit B, Sten. Tr. at 3-5, 7-8, 11-12.

Emergency relief is requested because the land exchange will occur this Thursday absent this Court's clarification. At the May 3 status conference, Federal Defendants advised they are now "proceeding in the normal course" to close the land transfer with the Transmission Companies absent a preliminary injunction. *Id*. at 12. The district court directed Federal Defendants to provide "immediate notice" to Conservation Groups if and when a closing date for the exchange is set. *Id*. Today, at 4:22 p.m., the Federal Defendants advised the Conservation Groups by email that they have set a closing date of this Thursday, May 9, to close the land exchange with the Transmission Companies. The land transfer would allow the Transmission Companies to begin clearcutting and construction of their huge high-voltage powerline with very high towers in the riverbed of the Upper Mississippi River National Wildlife and Fish Refuge. Thus, irreparable harm to the National Wildlife and Fish Refuge and the Conservation Groups' interests will occur before the district court can issue its order on a permanent injunction for which oral argument is now set for August 8, 2024, unless this Court provides the requested clarification, or takes other equitable action to maintain the status quo prior to Thursday.

But this "build first, judicial review later" approach is contrary to this Court's prior 2023 opinion, and it is clearly unfair and inequitable to the Conservation Groups who deserve their day in court on the merits of their claims before the National Wildlife and Fish Refuge is irreparably harmed. As this Court previously held, "[t]he cost of construction is one the utilities have opted to incur and bear the risk of" such that Conservation Groups would have the opportunity to seek effective judicial review once there is a final agency action and the administrative record is produced. 74 F.4th at 494-96. Indeed, "[t]he difficulty of stopping a bureaucratic steam roller, once started . . . [is] a perfectly proper factor for the district court to take into account" when considering an injunction. *Sierra Club v. Marsh*, 872 F.2d 497, 504 (1st Cir. 1989). Thus, courts have stepped up to stop projects that end-run NEPA and other environmental law violations, even when the projects have been partially constructed. *See, e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 645 F.3d 978, 991, 995 (8th Cir. 2011) (noting defendants' "repeated decisions to proceed with plant construction even in the absence of administrative authority").

This Court previously stated "[w]e do not express any opinion on the merits of the question," and further recognized that a preliminary injunction could be appropriate to enjoin the Transmission Companies' powerline activities on land

*within* "federal control," which, here, is the Congressionally-established Upper Mississippi River National Wildlife and Fish Refuge. 74 F.4th at 496.

There is now final agency action. Conservation Groups moved expeditiously to preliminarily enjoin the Transmission Companies and Federal Defendants from moving forward to close their land swap and begin construction through the Refuge, and the district court ordered Federal Defendants to produce the administrative record. The administrative record was not produced by Federal Defendants, however, until the afternoon of April 29, 2024, and it is admittedly missing some documents for which confidentiality is still being assessed.

This Court's May 2 Order states that the "district court remains free to consider whether a permanent injunction is appropriate" and is silent as to whether the district court retains authority to preliminarily enjoin the Federal Defendants and Transmission Companies. Doc. 27 at 2. The May 2 Order also addresses the district court having not specifically addressed the *Winter* factors in its order denying a stay to the Transmission Companies and granting a preliminary injunction in favor of the Conservation Groups. *Id.* This Court's May 2 Order also directs the district court to consider the *preliminary injunction* sections of the FAST Act, 42 U.S.C. §4370m–6(b)(1) & (2) for purposes of the ultimate permanent injunction. *Id.*

With this Court's clarification of its May 2 Order, the district court will be able to consider a temporary restraining order and preliminary injunction, in a directed manner wholly consistent with the *Winter* factors, to prevent the Transmission Companies from clearcutting and plowing through the National Wildlife and Fish Refuge *before* the district court can conduct effective judicial review of the merits of the Conservation Groups' claims following final agency action as provided by this Court's decision in *Driftless Area Land Conservancy*, 74 F.4th 489, 494-96 (7th Cir. 2023).

At the May 3 status conference, the district court informed the parties that it read this Court's May 2 Order to preclude considering granting a preliminary injunction to the Conservation Groups during the expedited time period in which the district court is proceeding to determine whether a permanent injunction is appropriate. *See* Exhibit B, Sten. Tr. at 3 and 8 ("I don't read it as inviting further findings from this court on the merits of the preliminary injunction. In fact, to the contrary, the language, although brief, seems to suggest that the only issue left for the [c]ourt is on the merits of the case itself . . . ."). The district court set an expedited schedule for this ultimate determination on the merits. *See* Exhibit A, Text Order, May 3, 2024. The district court invited Conservation Groups to seek clarification from this Court as to whether there remains an opportunity for the district court to make supplemental findings and

issue an order preliminarily enjoining the Federal Defendants and Transmission Companies from closing the land exchange agreement and beginning clearcutting and other construction-related activities to run their high-voltage powerline with very high towers through the protected National Wildlife and Fish Refuge. *See* Exhibit B, Sten. Tr. at 4. Such a preliminary injunction order would have to expressly address the factors set forth in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008) and the FAST Act.

Regarding the Transmission Companies' motion to stay the district court's March 21 and 25 preliminary injunction orders, this Court previously ordered: "This court will defer action on these motions until the district court has acted (within a reasonable time) on the pending motion for stay." Doc. 18. The district court then did act within a reasonable time in denying the Transmission Companies' motion for a stay of the preliminary injunction granted to the Conservation Groups. The district court *did* make an "independent finding about the plaintiffs' probability of success." Doc. 27 at 2. The district court's April 26, 2024 Opinion and Order "concluded that plaintiffs had a likelihood of success in showing defendants' 'suitability' analysis is also flawed." Dist. Ct. Doc. 88 at 7-8. The district court then moved forward to "weigh this likelihood of success with irreparable harm and other relevant equities," including the public interest. *Id*. at 8-10.

The district court set an accelerated and considered schedule in order to promptly reach a ruling on a permanent injunction. *See* Exhibit A. The district court will conduct a site visit in mid-June, and set June 17 as the date for the Conservation Groups to file any motion to supplement the administrative record and for all parties to file their affirmative summary judgment motions, with a hearing date on all motions set for August 8 or 9. *See* Exhibit B at 4-7.

The Conservation Groups do not interpret this Court's May 2 Order as barring the district court from granting preliminary injunctive relief to preserve the status quo and prevent closing on the land exchange and construction of the huge high-voltage powerline through the protected National Wildlife and Fish Refuge, which are federal lands, while the district court proceeds to determine whether permanent injunction relief is appropriate. Rather, Conservation Groups interpret the Court's May 2 Order as leaving room for such preliminary injunctive relief, provided the district court's order, if it is to grant such relief, expressly addresses the *Winter* factors and the FAST Act considerations.

Indeed, subpart 6(b) of the FAST Act to which this Court directed the district court's attention is titled "Preliminary injunctive relief" and directs that "*in any action seeking a temporary restraining order or preliminary injunction* against an agency or project sponsor in connection with review or authorization of a covered project" that the court is directed to take certain factors into account. 42

8

U.S.C. § 4370m-6(b) (emphasis added). Presumably, this Court would not have directed the district court to consider these FAST Act factors if it had not intended that the district court might consider a preliminary injunction motion following this Court's May 2, 2024 Order.

Some context here: "The Upper Mississippi River National Wildlife and Fish Refuge was established by Congress in 1924 as a refuge and breeding place for migratory birds, and as a refuge for other birds, wildlife, fish and plants." 16 U.S.C. § 723. This Refuge is the gem of the National Wildlife and Fish Refuge System in the Midwest and is apparently among the most visited Refuges in the nation.

This Refuge "is designated as a Wetland of International Importance by the Ramsar Convention and a Globally Important Bird Area" because it is located within the Mississippi Flyway, where more than 290 species of birds migrate throughout the Refuge and more than 300 pairs of bald eagles. U.S. Fish & Wildlife Service ("USFWS") *Upper Mississippi River National Wildlife and Fish Refuge*, https://www.fws.gov/refuge/upper-mississippi-river/about-us. Ramsar sites are recognized as being of significant value not only for the country or countries in which they are located, but for humanity as a whole, and such site designation embodies the government's commitment to take steps necessary to ensure that its ecological character is maintained. *Wetlands of International*

*Importance*, Ramsar: The Convention on Wetlands,

https://www.ramsar.org/about/our-mission/wetlands-international-

importance. The Refuge, "bordered by steep wooded bluffs that rise 100 to 600

feet above the river valley, the Mississippi River corridor and [R]efuge offer

scenic beauty and productive fish and wildlife habitat unmatched in the heart of

America." U.S. Fish & Wildlife Service ("USFWS") *Upper Mississippi River*

*National Wildlife and Fish Refuge,* https://www.fws.gov/refuge/upper-

mississippi-river/about-us.

The effect of continuing this litigation without preliminary injunctive relief

is to potentially allow the Transmission Companies to build their high-voltage

powerline through the protected National Wildlife and Fish Refuge without the

district court or this Court ever reaching the substantive merits of the

Conservation Groups' claims and, for present purposes, their likelihood of their

success on the merits.

As the district court has found on several occasions, construction of the high-

voltage transmission line would irreparably harm Plaintiffs-Appellees

Conservation Groups and the Congressional-established National Wildlife and

Fish Refuge. *Nat'l Wildlife Refuge Ass'n v. Rural Utils. Serv.*, No. 3:24-cv-00139-

wmc, Doc. 88 at *2, *8, (W.D. Wis. April 26, 2024). Congress has expressly stated

that "powerlines" are subject to the Defendant U.S. Fish & Wildlife Service's

10

"compatibility" determination under the National Wildlife Refuge System Improvement Act of 1997. 16 U.S.C. § 668dd(d)(1)(B); *see* 16 U.S.C. § 668dd(d)(3)(A)(i). [1]

The district court expressly invited Conservation Groups to seek clarification from this Court to allow the district court to act to enter a preliminary injunction order if the law and facts justify making the findings directly aligned with the *Winter* factors. *See* Exhibit B, at 3-4, 7-12.

The district court appears prepared to do so if this Court will clarify that the district court is permitted to do so. *See* Exhibit B, at 3-4, 11-12 ("I would certainly consider it if the Seventh Circuit clarifies that they intend for me to make preliminary findings rather than proceed immediately to the merits.").

Therefore, Conservation Groups request that this Court issue an Order clarifying its May 2, 2024 Order to instruct that the district court is not barred from or divested of authority to preliminarily enjoin Federal Defendants and the Transmission Companies from closing the land exchange agreement and beginning construction through the Refuge; and, in fact, *can* issue further preliminary injunctive relief, so long as that decision is grounded in and

---

[1] "The Secretary is authorized, under such regulations as he may prescribe, to—…permit the use of, or grant easements in, over, across, upon, through, or under any areas within the System for purposes such as but not necessarily limited to, *powerlines,* telephone lines, canals, ditches, pipelines, and roads, including the construction, operation, and maintenance thereof, *whenever he determines that such uses are compatible with the purposes for which these areas are established.*" 16 U.S.C. § 668dd(d)(1)(B).

expressly addresses the *Winter* factors and includes proper consideration of the

FAST Act, 42 U.S.C. § 437m-6(b)(1) and (2), which specifically apply to

"[p]reliminary injunctive relief."


Dated: May 6, 2024

                                            Respectfully submitted,

                                            */s/ Howard A. Learner*
                                            Howard A. Learner
                                            Daniel Abrams
                                            Environmental Law & Policy Center
                                            35 East Wacker Drive, Suite1600
                                            Chicago, IL 60601
                                            (312) 673-6500
                                            hlearner@elpc.org
                                            dabrams@elpc.org

                                            *Attorneys for Plaintiffs-Appellees*
                                          *National Wildlife Refuge Association, Driftless*
                                          *Area Land Conservancy, and Wisconsin*
                                          *Wildlife Federation*

**CERTIFICATE OF COMPLIANCE**

This document complies with the typeface requirements of Circuit Rule 32 and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word in 13-point Book Antiqua.


DATED: May 6, 2024


SIGNED:    _/s/ Howard A. Learner_____
Howard A. Learner
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 673-6500
hlearner@elpc.org

*Attorney for Plaintiffs-Appellees*
*National Wildlife Refuge Association,*
*Driftless Area Land Conservancy, and*
*Wisconsin Wildlife Federation*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


DATED: May 6, 2024

SIGNED:     */s/ Howard A. Learner*
            Howard A. Learner
            Environmental Law & Policy Center
            35 East Wacker Drive, Suite 1600
            Chicago, IL 60601
            (312) 673-6500
            hlearner@elpc.org

            *Attorney for Plaintiffs-Appellees*
            *National Wildlife Refuge Association,*
            *Driftless Area Land Conservancy, and*
            *Wisconsin Wildlife Federation*